, UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANNETTE PETRUSA** and **ANNETTE PETRUSA, INC. D/B/A KIPS BAY TOWERS REALTOR,** | CIVIL ACTION NO.: |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| **THE CONDOMINIUM BOARD OF THE KIPS BAY TOWERS CONDOMINIUM INC.,** | |
| Defendant. | |

Plaintiffs Annette Petrusa ("Petrusa") and Annette Petrusa, Inc. d/b/a Kips Bay Towers Realtor ("API") (collectively "Plaintiffs") hereby state as follows by way of Complaint against Defendant The Condominium Board of the Kips Bay Towers Condominium Inc. ("KBTC").

## SUBJECT MATTER JURISDICITON

1.      This Court has original jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331 since this action is brought under the laws of the United States, and specifically 15 U.S.C. § 1051 et. seq., known as the Lanham Act.

## PERSONAL JURISDICTION & VENUE

2.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because  Defendant resides in this district and is a resident of the State of New York. Venue is also proper in the SoutAnnhern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because both a substantial part of the events or omissions giving rise to the claim occurred in this District.

BE:9844571.1/PET159-273006

3.       This Court has general personal jurisdiction over Defendant because it is a resident of the State of New York and subject to general jurisdiction of the Courts located within the State of New York.  This Court also has specific personal jurisdiction over Defendant because this action arises out of Defendant's contacts and actions within the State of New York and because Plaintiffs suffered their injury within the State of New York.

## THE PARTIES

4.       Petrusa is a citizen of the State of New York having her principal residence located at  333 East 30th Street, Apt. 10C, New York, New York 10016.

5.       API is a New York corporation doing business as Kips Bay Towers Realtor having its principal place of business located at 53 East 34th Street, New York, New York 10016. Petrusa is the 100% stockholder, sole officer and sole director of API.

6.       Upon information and belief, KBTC is a New York not for profit corporation organized and existing under New York State's Not For Profit Corporation Law having its principal place of business located at 300 East 33rd Street, New York, New York 10016.

## THE FACTS

**Factual Background**

7.       Petrusa and her company API are real estate brokers and listing agents that have been providing real estate brokerage and listing services to the New York City community for approximately twenty (20) years.

8.       For approximately the last twenty (20) years, Petrusa and API have been doing business under the name "Kips Bay Towers Realtor" as a New York State licensed real estate broker and agent.

9.       Over the last approximately twenty (20) years, Petrusa and API have achieved significant public fame, goodwill and notoriety in the New York City and surrounding areas as

2

the pre-eminent real estate brokers and agents for listing, marketing, advertising, selling and/or leasing condominium units in the Kips Bay Towers condominium complex located at: (i) 300 East 33rd Street, New York, New York 10016; (ii) 330 East 33rd Street, New York, New York 10016; (iii) 333 East 30th Street, New York, New York 10016; and (iv) 343 East 30th Street, New York, New York 10016.

10.     For example, a March 15, 2018 newspaper article published by the New York Post quoted and photographed Petrusa for her many years of experience and knowledge of the Kips Bay neighborhood while working as a real estate broker and agent living at Kips Bay Towers.  It further quotes her on her knowledge of units in the Kips Bay Towers condominium and the market for such units at that time.

11.     Additionally, KBTC and its Board of Directors have publicly stated to third-parties interested in purchasing and/or leasing condominium units in the Kips Bay Towers Condominium complex that plaintiffs are one of KBTC's recommended real estate brokers and agents for listing, selling and/or marketing units in the Kips Bay Towers condominium complex.

12.     Since 1995, Plaintiffs have been the top selling broker/realtor of condominiums in the Kips Bay Towers condominium complex.

13.     Moreover, during the last approximately twenty (20) years, Petrusa and API have specialized in listing, advertising, marketing, selling and leasing condominium units exclusively in Kips Bay Tower condominium complex comprised of two (2) condominium towers located in the center of Manhattan.

14.     During the last twenty (20) years, Petrusa and API have made it clear publicly that Plaintiffs have absolutely no connection or affiliation with KBTC or the Board, and that Plaintiffs are not authorized to represent KBTC or the Board.

3

15.     API currently employs and owns a website using the "Kips Bay Towers Realtor" wordmark. Plaintiffs' goodwill and business reputation as a real estate listing agent and broker is so strong in the public domain regarding her ability, knowledge and expertise brokering and listing real estate in the Kips Bay Towers condominium complex that the website receives over 1,000 hits per month from third-parties interested in leasing or purchasing real estate in the Kips Bay Towers condominium complex through Plaintiffs.

16.     Since the inception of starting the website approximately eighteen (18) years ago, Petrusa and API have paid for all costs and expenses associated with maintaining and updating her website.

17.     Given the tremendous goodwill, positive notoriety and business reputation plaintiffs have achieved while using the mark "Kips Bay Towers Realtor" in their business, and their current business reputation among the public while using that mark as the pre-eminent real estate agent and broker for real estate located within the Kips Bay Towers condominium complex, Petrusa and API sought federal trademark protection and rights for the mark "Kips Bay Towers Realtor."

18.     "Kips Bay" is an area of central Manhattan that has been called by that name since the time of the Revolutionary Way in 1776, and the name is associated with the areas of Manhattan surrounding 33th Street on the eastern side of Manhattan island.

19.     On or about August 21, 2017, Petrusa filed a Trademark Registration application under application No. 87576980 for the mark "Kips Bay Towers" for "real estate listing" and "real estate brokerage" services in International Class 036.

BE:9844571.1/PET159-273006

20.     On February 13, 2018, the United States Patent and Trademark Office ("USPTO") granted Petrusa's Trademark Application registering "Kips Bay Towers" the Mark with under Trademark Registration No. 5,403,736 (the "Registration").

21.     The granting of the Registration for the mark "Kips Bay Towers" for real estate listing" and "real estate brokerage" services (the "Mark") followed plaintiffs' approximately twenty (20) year history of using this Mark in plaintiffs' business of listing, advertising, marketing, selling and leasing real estate in the New York City community.

22.     No objections or efforts to oppose Petrusa's application for Registration was made by Defendant and/or any other third-party.

23.     At all times before, during and after the filing of the above Trademark Registration application, Plaintiffs have exclusively used the Mark for "real estate listing" and "real estate brokerage" services.

24.     At no point during the last twenty (20) years has the Board or KBTC engaged in the promotion, sale, advertising, marketing or leasing of the condo units at Kips Bay Towers condominium complex.

25.     As a result of Plaintiff's continuous use of the Mark since their first use and adoption in the course of their business, the Mark has developed significant goodwill among the consuming public and consumer acceptance of the services offered by Plaintiffs in conjunction with the Mark.  Such goodwill and widespread usage has caused the Mark to acquire distinctiveness with respect to Plaintiffs as Owner of the Mark, and have caused the Mark to become a valuable asset of Plaintiffs' business.

26.     Furthermore, Plaintiffs' use of the Mark for real estate listing and real estate services for the last approximately twenty (20) has been open, notorious and known to the Board and KBTC, as well as the general public.

27.     Petrusa currently licenses the Mark to her company API.

**KBTC's Fraud Upon the TTAB and Efforts to Strong Arm Plaintiffs Into Surrendering Plaintiffs' Valid and Registered Trademark**

28.     As of November 30, 2016, an applicant named "Kips Bay Tower Condominium" obtained a New York State registration for the name "Kips Bay Towers Condominium" for "housing services, apartments and commercial rental space" under Registration No. NYS23842. There is no legal entity named "Kips Bay Tower Condominium" registered with the New York State Secretary of State as of the date of the filing of this lawsuit.

29.     That state registration is pre-empted by the Lanham Act and federal laws governing the registration, ownership, use, assignment and protection of trademarks within the United States of America.

30.     At no point in time during the approximately twenty (20) years that Petrusa and API used the name "Kips Bay Towers Realtor" in their real estate agency and brokerage business did the Board or KBTC ever engage in the business of "real estate listings," "real estate brokerage" services, advertising, marketing, selling and/or leasing real estate – either in the Kips Bay Towers condominium complex or outside that condominium complex.

31.     KBTC and the Board have absolutely zero public notoriety, goodwill, business reputation, public recognition and/or any other positive reputation in the real estate brokerage and listing industries because they have never engaged in these businesses at any point in time.

32.     On August 25, 2017, the Board's counsel wrote an absurd letter to Petrusa contending the Board was the owner of the Mark and demanding she remove the Mark from her

website, transfer the website to Defendant' name, and have all of plaintiffs' contacts permanently re-directed to Defendant' own website within thirty (30) days.

33.    Equally absurd, the Board's counsel contended that Plaintiffs' use of the Mark somehow infringed upon the New York State trademark for "Kips Bay Towers Condominium" (which is owned by a non-existent entity, Kips Bay Towers Condominium) for "housing services, apartments and commercial rental space," which has no priority, pre-emptive and/or superior rights of any kind to Plaintiffs' federally registered and protected Mark for real estate services.

34.    On or about August 30, 2017, Plaintiffs' counsel replied to Defendant's counsel in relevant part:

- The term Kips Bay is a geographical location.  More specifically Kips Bay is a neighborhood in the New York City Borough of Manhattan.  The term Kips Bay has been incorporated as an identification element in buildings other than Kips Bay Towers Condominium.  For example, there is a building two blocks away called Kips Bay Court and a AMC movie theater called AMC Kips Bay 15 around the corner from the complex.

- Building representatives and members of the Kips Bay Towers Condominium Board have been aware of Ms. Petrusa's ownership of kipsbaytowers.com Uniform Resource Locator, or URL, and use of the associated website www. kipsbaytowers.com, continuously for the past eighteen (18) years.  More particularly, Kips Bay Towers Condominium representatives and Board members have communicated with Ms. Petrusa for over eighteen (18) years using an e-mail address associated with the kipsbaytowers.com URL and Kips Bay Towers Condominium Board members have used www. kipsbaytowers.com to buy, sell and rent their apartments.

- Over two (2) years ago, Ms. Petrusa was asked by the Kips Bay Towers Condominium Board to form and work on a new security committee and attend community board meetings as an authorized representative of Kips Bay Towers Condominium generally, and of the Kips Bay Towers Condominium board in particular.  Ms. Petrusa received a complimentary letter from the Kips Bay Towers Condominium Board as a result of said representation.

- The listings for the associated website www.kipsbaytowers.com and internal Kips Bay Towers Condominium website www.kipsbayresidents.buildinglink.com were each submitted to and approved for publication on the www.kipsbaytowers.com

by authorized representatives of KBTC and the Board.  Ms. Petrusa's content for the listings included reference to the associated website www. kipsbaytowers.com and were always approved by Defendant.

- The listings for the associated website www.kipsbaytowers.com were also promoted using a flyer the Kips Bay Towers Condominium staff posted in the glass case bulletin board in the basement.  These flyers also contained references to both the kipsbaytowers.com URL and the associated website www.kipsbaytowers.com.  Said flyers were always approved by authorized Kips Bay Towers Condominium representatives prior to posting on the Kips Bay Towers Condominium bulletin board.

- For the past eighteen (18) years, when residents or non-residents call and ask the Kips Bay Towers Condominium staff management office for the name of a real estate broker, the Kips Bay Towers Condominium staff management office would refer Ms. Petrusa as one of several sources of real estate brokers for the Kips Bay Towers Condominium.  KBTC is not a source of real estate broker services.

- A trademark is a word, symbol, or phrase, used to identify a particular seller's goods or service and distinguish them from the goods or services of another (15 U.S.C. 1127). In the present matter, trademark law protects the consumers from confusing the sources of real estate broker services offered by Kips Bay Towers Realtors from those of others.

- Trademark rights that arise from use (rather than from registration) are sometimes referred to as "common law" trademark rights.  Common law trademark rights are specifically enforceable in the geographic area in which the mark is used.  In this instance, Kips Bay Towers Realtor has been a source of realty service for the past eighteen (18) years.  This mark has been closely associated with both the kipsbaytowers.com URL and associated www.kipsbaytowers.com website.  Allowing Kips Bay Towers Condominium to use either the kipsbaytowers.com URL and associated www.kipsbaytowers.com website would result in confusing the public.

- The United States trademark law does not protect geographic terms or signs that are generic for goods/services.  A geographic term or sign is considered "generic" when it is so widely used that consumers view it as designating a category of all of the goods/services of the same type rather than as a geographic origin.  Similarly, the United States trademark law does not protect terms that are merely descriptive such as the use of "Tower" for a tower.  Thus, the only part of the trademark Kips Bay Towers Condominium which is protected by trademark law is "Condominium," if any.  Similarly, the only element of Kips Bay Towers Realtor protected is "Realtor."  A consumer of real estate broker services is not likely to confuse Condominium with Realtor.

- Due to trademark use both in terms of time and services offered, Kips Bay Towers Realtor has priority.  Kips Bay Towers Realtor is the "senior" mark and it

8

is not likely to cause confusion in the minds of consumers about the source or sponsorship of the services; and

- The existing use of Kips Bay Towers Realtor trademark, the kipsbaytowers.com URL and the associated website www.kipsbaytowers.com also benefits from an equitable doctrine. In particular, "laches" dictates that if a party sits idly on rights without enforcing them, then said right will be forfeited.  The test for laches is "if you knew or should have reasonably known of infringement, but failed to act . . .."  In this instance, both Kips Bay Towers Condominium board members and employees of Kips Bay Towers Condominium had actual knowledge of the Kips Bay Towers Realtor trademark for eighteen (18) years without objecting to its use.

35.     In an extreme demonstration of very bad faith and unclean hands, on or about August 30, 2017, the Board (on behalf of KBTC) filed two frivolous Trademark Applications No. 87728447 and No. 87728451 for the marks "Kips Bay Towers" and "Kips Bay Towers Condominium" for "real estate management services."

36.     Further, nearly a half a year after the receipt of Plaintiffs' letter detailing the open and notorious use of the Mark and how said use of the Mark was known to the Defendant, the Board applied on Dec. 20, 2017 for the Trademark Registrations No. 87728447 and No. 87728451 now blocked by Plaintiffs' Registration.

37.     Defendant' two (2) applications were both denied based upon Petrusa's ownership and registration of the Mark.

38.     On or about December 20, 2017, in apparent retaliatory attack on plaintiffs' Mark for Defendant' inability to register the marks they frivolously sought, the Board on behalf of KBTC filed a frivolous and knowingly false Cancellation Proceeding with the USPTO to cancel Petrusa's Mark before the Trademark Trials and Appeal Boad ("TTAB") under Cancellation Petition No. 92068025.

39.     The Trademark Office Examining Attorney for Defendant's two (2) denied applications stated and found that Defendant's rights (if any) associated with the two trademark

applications (87728447 and 87728451) cited by their Cancellation Petition were refused

registration because they are geographically descriptive.  Specifically, the Examiner found as

follows:

### REFUSAL- GEOGRAPHICALLY DESCRIPTIVE

Registration is refused because the applied-for mark is primarily
geographically descriptive of the origin of applicant's goods and/or
services.  Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2);
see TMEP §§1210, 1210.01(a).

A mark is primarily geographically descriptive when the following
is demonstrated:

(1) The primary significance of the mark is a generally known
geographic place or location;

(2) The goods and/or services for which applicant seeks
registration originate in the geographic place identified in the
mark; and

(3) Purchasers would be likely to make a goods-place or services-
place association; that is, purchasers would be likely to believe that
the goods and/or services originate in the geographic place
identified in the mark.

TMEP §1210.01(a); see In re Societe Generale des Eaux Minerales
de Vittel S.A., 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed. Cir.
1987); In re Hollywood Lawyers Online, 110 USPQ2d 1852, 1853
(TTAB 2014).

KIPS BAY is a generally known geographic location, and is
specifically a neighborhood area in Manhattan.  See attached
website evidence at:

https://en.wikipedia.org/wiki/Kips_Bay,_Manhattan

https://www.wsj.com/articles/manhattans-overlooked-kips-bay-
1447412400

https://www.airbnb.com/locations/new-york/kips-bay

Further, applicant's address of record is located in Kips Bay.  See
attached website evidence for applicant's condominium building of
the same address at:

https://streeteasy.com/building/kips-bay-towers-300-east-33-street-new_york

When there is no genuine issue that the geographical significance of a term is its primary significance, and the geographical place is neither obscure nor remote, a public association of the goods and/or services with the place is presumed if an applicant's goods and/or services originate in the place named in the mark.  TMEP §1210.04; see, e.g., In re Cal. Pizza Kitchen Inc., 10 USPQ2d 1704, 1706 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California); In re Handler Fenton Ws., Inc., 214 USPQ 848, 849-50 (TTAB 1982) (holding DENVER WESTERNS primarily geographically descriptive of western-style shirts originating in Denver).

The addition of generic or highly descriptive wording to a geographic word or term does not diminish that geographic word or term's primary geographic significance.  TMEP §1210.02(c)(ii); see, e.g., In re Hollywood Lawyers Online, 110 USPQ2d 1852, 1853-54 (TTAB 2014) (holding HOLLYWOOD LAWYERS ONLINE primarily geographically descriptive of attorney referrals, online business information, and an online business directory); In re Cheezwhse.com, Inc., 85 USPQ2d 1917, 1920 (TTAB 2008) (holding NORMANDIE CAMEMBERT primarily geographically descriptive of cheese).

Here, the informational term TOWERS does not remove the primary geographical significance of the mark. Particularly, the word TOWERS would be understood to describe the type of building structure.  See attached dictionary evidence (at https://www.merriam-webster.com/dictionary/towers).

Because the primary significance of the mark is a well-known geographic location, applicant is located there, a services/place association is presumed, and the additional mark term does not diminish the geographic significance of the mark, the mark is primarily geographically descriptive under Trademark Act Section 2(e)(2), and must be refused.

40.     As a result, the Trademark Office Examining Attorney for Defendant's two (2)

denied applications stated and found that Defendant's rights (if any) associated with the two

trademark applications (87728447 and 87728451) cited by their Cancellation Petition were

refused registration based on these above realities.  Moreover, Defendant's basis for the

BE:9844571.1/PET159-273006

Cancellation Petition  (87728447 and 87728451) are therefore inherently un-protectable absent acquired distinctiveness.

41.     Worse still, Defendant admitted under penalty of perjury in their Cancellation Petition that they have been infringing on Plaintiffs' Mark by using it in their efforts to market, list and sell units within the Kips Bay Condominium Towers complex.

42.     Specifically, Paragraph 7 of the Cancellation Petition states that "The services covered by the Registration are identical and/or closely related to the services rendered in connection with Petitioner's Marks."

43.     In addition, Paragraph 8 of the Cancellation Petition states that "Registrant's Mark is identical to one of Petitioner's Marks and so resembles the other of Petitioner's Marks as to be likely, when used in connection with Registrant's services, to cause confusion, to cause mistake, and to deceive the trade and public, who are likely to believe that Registrant's services have their origin with Petitioner and/or that such services are approved, endorsed or sponsored by Petitioner or associate in some other way with Petitioner."

44.     Plaintiffs have been using the Mark and developing consumer recognition and goodwill for approximately twenty (20) years.  Such use was open, notorious and known to Defendant, particularly since it involved sales in their own condominium complex and since Petrusa resided in the complex and advertised within the condominium complex.  During the last twenty (20) years, the Board and KBTC failed to take meaningful action to assert the claims on which it bases the Cancellation Proceeding – and upon which such inaction Plaintiffs have relied upon to their detriment.

45.     Notably, the Board and KBTC have on numerous occasions during the past twenty (20) years utilized the services specifically associated with the Plaintiffs and the Mark.

Petitioner's Cancelation Proceeding is consequently barred by the doctrines of laches, acquiescence and estoppel.

46.     Moreover, Plaintiffs memorialized and publicized their open and notorious use of the Mark and such use was known to the Board and KBTC, thereby putting Defendant on actual notice of said use of the Mark.

47.     Defendant has also admitted to using the Mark in its own new efforts to perform "real estate listing" and "real estate services" relating to the lease and sale of units in the Kips Bay Towers Condominium complex, despite the fact it does not have the authorization or consent of Plaintiffs to use the Mark for such services.

48.     Furthermore, Defendant has unclean hands by virtue of the measures taken by them in or around 2017 to intentionally and wrongfully divert Petrusa's and API's internet-based consumers to Defendant through a campaign meant to cause consumer confusion.

## COUNT I

### (Trademark Infringement of Registered Mark - 15 U.S.C. 1114 et. seq. – Violation of Lanham Act)

49.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

50.     Defendant's use of Plaintiffs' Mark Anin the engagement of "real estate listings" and "real estate services" constitutes trademark infringement pursuant to 15 U.S.C. 1114, et. seq. of the Lanham Act.

51.     Defendant's admitted unauthorized use of the Mark in their performance of "real estate services" and "real estate listings" for purposes of distinguishing, marketing and/or branding the source of Defendant's real estate services constitutes trademark infringement of Plaintiffs' registered Mark on its face in violation of 15 U.S.C. 1114 et seq.

13

52.     Petrusa is the federally registered owner of the "Kips Bay Towers Realtor" Mark for use in "real estate listings" and "real estate services" in the real estate industry, and Defendant' use of the Mark in their advertising and marketing efforts to lease or sell real estate in the Kips Bay Towers Condominium complex constitutes an actual trademark infringement by Defendant of that Mark in violation of 15 U.S.C. 1114 et seq.

53.     As a result, Plaintiffs' have been and will continue to be damaged.

### COUNT II

**(Likelihood of Confusion – Violation of Section 43(a)(1)(A) of Lanham Act – 15 U.S.C. 1125(a))**

54.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

55.     Defendant's use of Plaintiffs' Mark in the engagement of "real estate listings" and "real estate brokerage" services, Defendant is creating a likelihood of confusion in the real estate services marketplace industry.

56.     As the registered owner of the Mark for use in "real estate listing" and "real estate brokerage" services, Petrusa and API have the exclusive and unfettered right to use the Mark and any similar mark for branding, marketing and identifying their real estate services provided to plaintiffs' clients within the real estate services industry, including but not limited to any service sector within real estate that is a natural extension of "real estate listing" and "real estate brokerage" services.

57.     Defendant's use of the Mark and/or attempted use of the Mark "Kips Bay Towers" in previous real estate services to distinguish Defendant's real estate services and capabilities will cause and/or is causing actual confusion and/or a likelihood of confusion in the real estate services marketplace and industry to the detriment of Plaintiffs.

14

58.     Moreover, Defendant's use of the Mark and derivatives of that Mark is also causing a likelihood of confusion.

59.     Defendant's use of the Mark without Plaintiffs' authorization to brand, distinguish and/or identify real estate services that Defendant provide, Defendant will and are confusing the public, the real estate industry and the general consumer public into believing that the source and origin of the real estate services provided by Defendant's is from Defendant's rather than Plaintiffs and/or vice-versa.

60.     Defendant's use in commerce of the Mark in Defendant's marketing, advertising and business operation, and a reproduction of the Mark, including its unauthorized incorporation into Defendant's engagement of real estate management services and real estate brokerage and listing services, infringes Plaintiffs' statutory trademark rights and ownership of the Mark, and is causing confusion in the real estate services marketplace for both competitors and the consumer public engaging in/using those services.

61.     Defendant's use of the Mark in the identical services sector constitutes trademark infringement of Plaintiffs' Mark on its face, and is also causing and/or is likely to cause a likelihood of confusion.

62.     The foregoing acts of Defendant are causing actual confusion in the real estate services profession and industry, and are likely to confuse and mislead members of the trade and public into the mistaken belief that Defendant's real estate services are associated with real estate services endorsed, affiliated, related to and/or sponsored by Plaintiffs in some way, and/or that the origin of the real estate services provided by Defendant's is from Plaintiffs rather than Defendant.

63.     Consumers and clients in the real estate services field seeking real estate listing or brokerage services, as well as the industry and individuals seeking to become real estate listing or

BE:9844571.1/PET159-273006

brokerage agents, are viewing and/or will view the Mark illegally being used by Defendant and confusingly assume that Defendant's real estate services is associated with, and has an origin from, Plaintiffs' brand of real estate services.  This is particularly true since Defendant admittedly directly compete with plaintiffs and have demanded by plaintiffs turns over plaintiffs' real estate listing and brokerage service website that generates most of plaintiffs' real estate services clientele.

64.     Defendant intended on selecting the Mark so they could benefit from the good will, recognition and likeness associated with plaintiffs' Mark in the real estate brokerage listing, and services industry.

65.     Plaintiffs have demanded Defendant cease and desist from these acts of trademark infringement and have given Defendant actual notice of plaintiffs' Registration.

66.     In addition, the USPTO has rejected both of Defendant' applications to register the Mark for "real estate management services" because such efforts was intended by Defendant to circumvent plaintiffs' Registration, while nevertheless using the Mark for real estate listing and brokerage services.

67.     Defendant have failed and/or refused to cease their infringing conduct.  By this conduct, Defendant have made substantial profits to which they are not legally in equity or good conscience entitled.

68.     Defendant without plaintiffs' permission are using the Mark owned by plaintiffs in connection with provision of real estate services, while advertising the same and/or similar real estate services that plaintiffs provided under the Mark, thereby causing a likelihood of confusion and actual confusion among the real estate services industry and the public.

69.     Defendant are using the Mark in commerce, in their business, on their advertising materials and on their website to financially gain to the detriment of plaintiffs.

BE:9844571.1/PET159-273006

70.     Defendant' conduct has caused and will continue to cause damage to plaintiffs unless restrained by this Court.

71.     The foregoing acts of Defendant are likely to confuse and mislead members of the real estate community and leasing/selling/purchasing public serviced by plaintiffs and Defendant, and these actions are likely to induce and/or are inducing the mistaken belief that Defendant are associated with "Kips Bay Towers Realtor" and plaintiffs' business, and/or that Defendant' real estate services are somehow endorsed or sponsored by plaintiffs or in some way related to, or affiliated with, plaintiffs.

72.     The aforesaid actions by Defendant constitutes a likelihood of confusion in violation of Section 43(a) of the Lanham Act codified at 15 U.S.C. § 1125(a).  The commissions by Defendant of the aforesaid acts have caused and will continue to cause plaintiffs irreparable injury for which they have no adequate remedy at law.

## COUNT III

### (Violation of Section 43(a) of Lanham Act - 15 U.S.C. 1125(a)(1)(B) – Unfair Competition/False Designation of Origin/False Advertising)

73.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

74.     As a result of the public's association of the Mark with plaintiffs for real estate listing and broker services, including the marketing of such services by plaintiffs in the real estate field and community, Defendant' use of the Mark in the marketing and sale of deceptively similar and/or identical real estate services has or is likely to cause confusion, mistake and to deceive to public.

75. Defendant' unauthorized, deliberate and intentional use of the Mark constitutes a false designation of origin and/or a false description of representation as to the source of the Defendant' real estate services.

76. Such use results in unfair competition by Defendant with plaintiffs since individuals in the real estate listing and brokerage services industries are likely to be misled and deceived into believing, contrary to fact, that Defendant' real estate services are sponsored, originated and/or endorsed by plaintiffs, or are otherwise connected, related to and/or affiliated with plaintiffs, when in fact they are not.

77. Such use therefore causes irreparable damage and harm to plaintiffs and plaintiffs' goodwill in their business, goodwill, image and the Mark.

78. Defendant' infringement has been willful and with the intention to deceive and confuse members of the public and the real estate services market.  Defendant' willful misuse is designed to deceive and confuse, and has deceived and confused persons into believing that the real estate listing and brokerage services that Defendant provide, market and/or  sponsored are in some way associated with and/or originate from plaintiffs, thereby infringing plaintiffs' Mark and unfairly competing with plaintiffs – thus causing irreparable damage and harm to plaintiffs.

79. Plaintiffs have notified Defendant of the infringement, but Defendant have intentionally, willfully and maliciously continued infringement of the Mark, and continue to do so despite additional warning of its misuse by plaintiffs and their counsel.

80. Defendant have marketed and advertised material using unauthorized reproductions of plaintiffs' Mark both standing alone and within their real estate services business marketing materials, with full prior knowledge of plaintiffs' prior use and Registration

BE:9844571.1/PET159-273006

of the Mark.  Defendant have also been fully aware during that time of the reputation and famous nature of the Mark and its identification with plaintiffs' real estate listing and brokerage services.

81.     Defendant have wrongfully and willfully promoted their real estate services in such a manner so as to inevitably suggest association, affiliation, and/or sponsorship with, or approval by, plaintiffs so as to cause, or be likely to cause, confusion, or mistake among purchasers of services as to origin of defendant's services, all to defendant's gain and plaintiffs' detriment.

82.     Defendant have wrongfully and without plaintiffs' consent adopted and used reproductions of plaintiffs' registered Mark as the dominant indication of source in connection with the provision of services by Defendant in the real estate services business, with full knowledge of the long and extensive prior use of that Mark by plaintiffs.

83.     Defendant have willfully promoted the sale in commerce of their real estate services in such a manner so as to falsely designate the origin or association with plaintiffs' Mark, and with plaintiffs' services, so as to inevitably cause false designation of origin and/or false advertisement among purchasers as to the true origin, source, sponsorship or affiliation of Defendant' product, all to defendant's profit and to plaintiffs' detriment.

84.     As a result, plaintiffs have been and will continue to be damaged.

## COUNT IV

**(Violation of Section 43(a) of Lanham Act - 15 <u>U.S.C.</u> 1125(a)(1)(B) – Unfair Competition/False Designation of Origin/False Advertising)**

85.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

86.     Plaintiffs' Registered Mark is a famous mark within the definition and meaning of the term "famous" under the Lanham Act.

BE:9844571.1/PET159-273006

87.     Defendant' actions and unauthorized use of the Mark is impairing and diluting the distinctiveness of the Mark within the real estate listing and brokerage services industry, and to the general public as a whole.

88.     The Mark is widely recognized by the general consuming public of real estate listing and brokerage services as the designation of source of such services from plaintiffs, the owners of the Mark.

89.     The Mark is valid and distinctive.  Defendant' use of the Mark without  plaintiffs' authorization or consent is diluting and/or is likely to dilute the distinctive quality of the Mark.

90.     Such dilution is being caused by "blurring" due to the association arising from the similarity between the famous Mark, and the almost identical and confusing "Kips Bay Towers" and "Kips Bay Towers Condominium" marks Defendant are currently using to market real estate service in the same competing niche market.

91.     Defendant' actions are lessening the capacity of plaintiffs' famous Mark to identify and distinguish the real estate services plaintiffs' provide in the real estate listing and brokerage services industry from the identical competitive services Defendant provide in those fields.

92.     As a result, plaintiffs have been and will continue to be damaged.

## COUNT V

### (Declaratory Judgment– 28 U.S.C. 2201 et. seq.)

93.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

94.     Plaintiffs seek a declaratory judgment pursuant to the federal Declaratory Judgment Act, 28 U.S.C. 2201 et. seq., that Defendant' unauthorized use of plaintiffs' Mark "Kips Bay Towers Realtor" or "Kips Bay Towers" in the provision of real estate services of any

20

kind is likely to cause and/or is causing confusion and dilution in the real estate services marketplace and the consuming public, to the detriment of plaintiffs.

95.     Plaintiffs seek a declaratory judgment pursuant to the Declaratory Judgment Act that Defendant' use of the Mark in any manner or derivative whatsoever within the real estate services industry constitutes trademark infringement, likelihood of confusion, actual confusion, dilution, likelihood of dilution and false designation of origin.

96.     Plaintiffs' further seeks a declaratory judgment that Defendant' use of plaintiffs' Mark infringes upon plaintiffs' owned and Registered Mark, and that Defendant cannot own, use and/or register the Mark within the real estate services fields.

97.     Further, plaintiffs' seeks a declaratory judgment that Defendant are required to withdraw their pending trademark applications and their Cancellation Petition respectively that are currently before the USPTO and the TTAB respectively, and that Defendant are prohibited from re-filing such  applications and petition.

## COUNT VI

### (Fraud Upon Trademark Trial & Appeal Board)

98.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

99.     Defendant have submitted intentionally false and misleading statements to the TTAB contending Defendant have priority over plaintiffs' use and Registration, and that Defendant somehow previously listed and brokered real estate before plaintiffs commenced doing so.

100.     Defendant have done so to intentionally mislead the TTAB in relying upon those intentional misrepresentations in hopes the TTAB will issue a cancelation of the Mark.

101.     As a result, plaintiffs have been and will continue to be damaged.

BE:9844571.1/PET159-273006

## COUNT VII

**(Unclean Hands Upon Trademark Trial & Appeal Board)**

102.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

103.     Defendant have submitted intentionally false and misleading statements to the TTAB contending Defendant have priority over plaintiffs' use and Registration, and that Defendant somehow previously listed and brokered real estate before plaintiffs commenced doing so.

104.     Defendant have done so to intentionally mislead the TTAB in relying upon those intentional misrepresentations in hopes the TTAB will issue a cancelation of the Mark.

105.     Defendant are engaging in frivolous litigation before the TTAB with unclean hands in an effort to convert and steal plaintiffs' Registration in the Mark without any legal or actual basis.

106.     As a result, plaintiffs have been and will continue to be damaged.

**WHEREFORE**, plaintiffs Annette Petrusa and Annette Petrusa, Inc. hereby demand the following relief in favor of plaintiffs and against Defendant Kips Bay Towers Condominium, Inc. and Kips Bay Towers Condominium, Inc. Board of Directors:

(a)     temporary restraints, preliminary injunctive and permanent injunctive relief against Defendant enjoining Defendant from in any way using the "Kips Bay Towers Realtor" Mark or "Kips Bay Towers" mark in their provision of real estate services, including but not limited to real estate listing and brokerage services, in the stream of commerce and/or in the real estate services field as a whole, including but not limited to Defendant' marketing, solicitations, advertising, publishing, promotions, branding, operations and/or any other aspect of Defendant' real estate services;

BE:9844571.1/PET159-273006

(b)      temporary restraints, preliminary injunctive and permanent injunctive relief against Defendant enjoining Defendant from in any way using the "Kips Bay Towers Realtor" Mark or "Kips Bay Towers" mark in their provision of real estate services in the stream of commerce, in the real estate services field as a whole, including but not limited to Defendant' marketing, solicitations, advertising, publishing, promotions, branding, operations and/or any other aspect of Defendant' real estate services business;

(c)      temporary restraints, preliminary injunctive and permanent injunctive relief against Defendant enjoining Defendant from in any way using the "Kips Bay Towers Realtor" Mark or "Kips Bay Towers" mark from infringing upon plaintiffs' Mark as described in this Complaint, and from otherwise unfairly competing with plaintiff in the real estate services industry in any manner by using either the "Kips Bay Towers Realtor" Mark or "Kips Bay Towers" marks directly or indirectly in the United States or elsewhere in the world in any manner whatsoever;

(d)      for all of plaintiffs' lost profits and actual damages resulting from Defendant' trademark infringement of the Mark, and plaintiffs' loss of business relating to Defendant' illegal use of the Mark;

(e)      for all attorneys' fees and court costs;

(f)      for punitive damages;

(g)      for treble damages pursuant to the Lanham Act;

(h)      for statutory damages, attorneys' fees and costs under the Lanham Act;

(i)      for destruction of any and all goods and marketing materials infringing upon plaintiffs' Mark and/or containing the Mark;

BE:9844571.1/PET159-273006

(j)      an actual accounting of the profits that Defendant have generated from their unauthorized use of the Mark;

(k)      a declaratory judgment that Defendant have no legal right to use the Mark or the name "Kips Bay Towers" in the provision of any real estate services of any kind, including but not limited to real estate listing and brokerage services;

(l)       a declaratory judgment that Defendant' two (2) pending trademark application be declared unlawful, withdrawn, prohibited, null and void;

(m)      a declaratory judgment that Defendant' pending Cancellation Petition before the TTAB be declared unlawful, withdraw prohibited, null and void;

(n)      recovery and disgorgement in plaintiffs' favor of Defendant' profits relating to the unauthorized use of the Mark;

(o)      temporary restraints, preliminary injunctive relief and permanent injunctive relief against Defendant enjoining Defendant from in any way using the Mark in the real estate listing or brokerage industry as a whole, including but not limited to Defendant' marketing, solicitations, advertising, publishing, promotions, branding, operations and/or any other aspect of Defendant' real estate management services, listing services and/or brokerage services; and

(p)      for any other relief the Court deems equitable and proper, including any and all relief available to plaintiffs pursuant to the remedies set forth at 15 <u>U.S.C</u>. 1117.

## **CERTIFICATION PER LOCAL RULE 1.6**

I hereby certify that the above referenced matter in controversy is not related to any other pending matter or arbitration, except for the related Petition for Cancellation currently pending before the Trademark Trial & Appeals Board captioned <u>The Condominium Board of the Kips</u>

BE:9844571.1/PET159-273006

<u>Bay Towers Condominium, Inc. v. Petrusa,</u> Cancellation Petition No. 92068025 that may relate

to some of the claims set forth in this matter.

<div style="margin-left:50%">

**BRACH EICHLER LLC**
Attorneys for Plaintiff

*/s/ Haralampo Kasolas, Esq.*
Haralampo Kasolas, Esq.
Anthony M. Rainone, Esq.

**BRACH EICHLER LLC**
101 Eisenhower Pkwy
Roseland, New Jersey 07069
Tel: (973) 228-5700
Fax: (973) 618-5539
Attorneys for Plaintiffs Annette Petrusa and
Annette Petrusa, Inc. d/b/a Kips Bay Tower
Realtors

</div>

DATED: August 27, 2018